# CHICAGO, R. 1. & P. RY. CO. v. TINER.

No. 5582.   Opinion Filed December 21, 1915.

(153 Pac. 857.)

1.   **CARRIERS—Duty of Warehouseman—Notice.** Early in September T. ordered a wagon to be shipped to him at Coalgate, Okla., by M., a firm in Iowa, over defendant's railway line, under bill of lading, naming T. as consignee, destination and point of delivery, Coalgate, with no further instructions. The shipment arrived at Coalgate September 21st, and within 24 hours a post card was mailed by defendant to T., addressed to Coalgate, giving notice of the arrival of the freight, and that it was ready for delivery. It not being called for, on October 22d thereafter defendant notified consignor in Iowa that the freight had not been called for, and that charges had accrued, and asked for instructions. No instructions came, and the freight was stored in a room near defendant's depot until November 25th thereafter, when it, with the depot and outbuildings, was destroyed by fire. **Held,** that after the giving of the notice, as required by statute, and after affording a reasonable opportunity for the delivery of the freight, the liability of defendant as a common carrier ceased. and that of a warehouseman began.

    (a)   That, under the facts shown, the duty of defendant in storing the goods only required the exercise of ordinary care in selecting and placing them in a reasonably safe place, and in exercising ordinary care for their protection thereafter.

2.   **SAME—Shipment Destroyed by Fire—Negligence—Sufficiency of Evidence.** The evidence fails to show any negligence or want of

care upon the part of defendant in relation to the goods or their loss. Therefore the verdict has nothing upon which to rest.

(Syllabus by Brewer, C.)

*Error from County Court, Coal County;*
**P. E. Wilhelm, Judge.**

Action by N. T. Tiner against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Reversed.

*C. O. Blake, R. J. Roberts, W. H. Moore, J. G. Gamble,* and *J. G. Ralls,* for plaintiff in error.

*G. T. Ralls,* for defendant in error.

Opinion by BREWER, C. This suit was brought by defendant in error, Tiner, to recover the value of a spring wagon destroyed in a fire which consumed the railway depot, warehouse, and outbuildings. The facts, as may be summarized from the record, are: Early in September, 1908, Tiner, who will hereafter be called plaintiff, ordered a spring wagon from Spaulding Manufacturing Company, a firm doing business in the State of Iowa, to be shipped to him at Coalgate, Okla. This wagon was shipped, and arrived at Coalgate September 21, 1908; the waybill showing that the goods had been shipped to plaintiff, as consignee, at Coalgate. The next day, September 22, the railway company notified plaintiff by post card, in the usual form, addressed to him at Coalgate, of the arrival of his freight. This notice plaintiff claims he never received, inasmuch as he lived in the country and got his mail at a point off the railway. However, there was nothing in the bill of lading to indicate but that he lived at Coalgate, the point to which the goods were consigned. Afterwards, on October 22, 1908, not having heard from plaintiff, the consignee, in

the meantime, the railway company notified the con-
signor by letter of the arrival of the goods, that they had
not been delivered, because uncalled for, that charges
for storage had accrued and were daily accruing, and
asked to be advised by return mail as to what disposition
should be made of the goods. The railway company, it
appears, received no reply; but plaintiff admits that he
had a letter from the consignor concerning the matter.
The goods remained, however, uncalled for and unde-
livered until November 25, 1908, at which time they
were destroyed in a fire which destroyed the depot and a
small building in close proximity thereto in which the
wagon had been stored for safe-keeping.

At the close of the evidence the railway company
demurred thereto, which demurrer was overruled by the
court, and the cause submitted to a jury, which found
for plaintiff in the value of the wagon. The railway
company argues here that there was no evidence what-
ever to show liability upon its part, because: (1) Under
the unconflicting evidence, it is shown that its obligation
as a carrier had ceased at the time of the loss, and that
of a warehouseman had attached; and (2) that, as a
mere warehouseman, it was liable for loss of the goods
only in case it was negligent as regards protecting same,
and that the evidence fails to show, in the slightest de-
gree, any negligence upon its part.

1. Under the facts as stated above, it seems quite
clear that plaintiff in error's liability was that of a ware-
houseman. We think the general rule may be stated to
be that, when goods have been carried to their destina-
tion, and reasonable opportunity allowed the owner to
remove them, proper notice having been given, where,

as here, the statute requires such notice, the duty of the railway company as a common carrier ceases, and that of warehouseman begins. 4 Elliott on Railroads (2d Ed.) sec. 1464; Hutchinson on Carriers (3d Ed.) secs. 685, 686; *N. Pa. R. R. Co. v. Com. Nat. Bank*, 123 U. S. 727, 8 Sup. Ct. 266, 31 L. Ed. 287.

Under our statutes (section 819, Rev. Laws 1910), a carrier must comply with the directions of the consignor or consignee, and deliver (section 821, Rev. Laws 1910) to the consignee at the place to which it is addressed, in the manner usual at that place; and, if the goods are not delivered upon their arrival, notice should be given under section 823, Rev. Laws 1910, which is as follows:

"If, for any reason, a carrier does not deliver freight to the consignee or his agent, personally, he must give notice to the consignee of its arrival, and keep the same in safety, upon his responsibility as a warehouseman, until the consignee has had a reasonable time to remove it. If the place of residence or business of the consignee be unknown to the carrier, he may give the notice by letter dropped in the nearest postoffice."

The next section (section 824, Rev. Laws 1910) provides that, if the goods are not removed within a reasonable time after the carrier has fulfilled his obligation to deliver, or duly offered to fulfill same, the carrier may exonerate himself from further liability by placing the freight in a suitable warehouse on storage, etc.

The railway company, having promptly given notice to the consignee named in the bill of lading at the place of destination therein shown, without any advice or instructions by either the consignor or consignee to do otherwise, seems to have performed its duty as a car-

rier fully under the law, and, under such circumstances, it had the right to store the goods, using reasonable care as to their protection from loss or damage. Therefore the only theory upon which the railway company could be held liable in this case would be upon the theory that the fire which destroyed the goods was the result of some act of negligence upon its part. We have examined the evidence on this phase of the case, and found none supporting the theory of negligence.

It is claimed by plaintiff:

"That it is reasonable to believe that the fire was started or caused by the negligence of the railway company, from sparks from a freight train, or from some of the employees of the company who had possibly been in the coalhouse for coal, or some material, and dropped a cigarette or cigar."

Of course this may have been what caused the fire; but it might just as well have been through any other of a hundred acts or agencies. Under the proof, the last freight train that had passed by the depot passed before noon, and the fire was not discovered until 3:30 in the afternoon; and we think it would be very unsafe to indulge the presumption that this train, or rather sparks from its engine, cause the fire. Nor is there any proof that any of the employees dropped a cigar or lighted match about the premises which caused the fire. In other words, as we have indicated before, no negligence has been proven; nor have facts been shown from which legitimate deductions or inferences could be drawn to fasten the charge of negligence.

This cause should be reversed, for the reason that there is no evidence reasonably tending to support the

verdict of the jury, and therefore the judgment of the court has no foundation upon which to stand.

By the Court: It is so .ordered.